# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. JOEL SCOTT STEPHENS

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 10CR445     John Dugger, Jr., Judge**

---

**No. E2011-01774-CCA-R3-CD - Filed March 30, 2012**

---

A Hamblen County Criminal Court jury found the appellant, Joel Scott Stephens, guilty of driving on a revoked license and violating the financial responsibility law. He was found not guilty of evading arrest. The trial court sentenced the appellant to a total sentence of six months in the Hamblen County Jail, with ninety days to be served in confinement. On appeal, the appellant challenges the trial court's imposition of ninety days of confinement. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Blake Sempkowski, Morristown, Tennessee, for appellant, Joel Scott Stephens.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Dan Armstrong, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, the State's sole witness, Hamblen County Sheriff's Deputy Donald Sauceman, testified that around dusk on January 28, 2010, he was driving behind the appellant's vehicle on Needmore Road when he noticed that one of the appellant's brake lights was not functioning. He activated his vehicle's blue lights and siren, but, despite ample opportunity

to pull over, the appellant kept driving for another mile or two before he turned into a driveway. The appellant went up the driveway, drove behind a house, and proceeded up a hill toward the woods. He was forced to stop because of trees. After stopping, the appellant got out of his vehicle and ran. A passenger remained in the appellant's vehicle. After chasing the appellant approximately one hundred yards, Deputy Sauceman apprehended him by using a taser. Deputy Sauceman took the appellant into custody and checked the appellant's license. Upon learning that the appellant's driver license was revoked and that he did not have insurance, Deputy Sauceman arrested the appellant.

The appellant testified that he was driving on Needmore Road with a passenger when he saw blue lights behind him. He said that he drove one-half of a mile and pulled into the driveway of a friend. He parked in a field, got out of his vehicle, and held up his hands. He said that he went around to the other side of the car because he saw Deputy Sauceman point a gun at him and feared the officer would shoot him. The appellant denied running, stating that he was not able to run. The appellant said that Deputy Sauceman shot him with a taser and "kneed" his back.

The appellant said that he did not hear a siren, noting that he could not hear well and wore hearing aids. The appellant acknowledged that he drove even though he knew his license was revoked. He said that the car he was driving did not belong to him and that he did not know he needed insurance.

At the conclusion of the proof, the jury found the appellant guilty of driving on a revoked license and violating the financial responsibility law.

The appellant's mother, Ann Stephens, testified at the sentencing hearing that the appellant lived with her and helped pay the bills. She also stated that she had "memory problems" and that the appellant assisted her.

The trial court noted that the appellant's conviction for violating the financial responsibility law was punishable by only a fine. The jury imposed the maximum fine of one hundred dollars. Additionally, the jury fined the appellant $1000 for driving on a revoked license.

Regarding the driving on a revoked license conviction, the trial court noted that the offense was a Class B misdemeanor that was punishable by up to six months in jail. The court found no mitigating factors. As an enhancement factor, the court found that the appellant had a previous history of criminal convictions or behavior. The court observed that the appellant had

a lengthy history of drugs, alcohol, driving, D.U.I., driving on revokeds. [The appellant has] a bad history of that for a long time. It goes all the way back to 1986; twenty-five years [he has] been in and out of courts for drugs and driving and D.U.I. and alcohol offenses. . . . [He] just [has not] been a productive citizen.

The court further noted that the appellant was on probation for simple possession of a Schedule II drug at the time he committed the instant offenses.

Regarding the manner of service of the sentence, the court found that the appellant had a long history of criminal conduct, that confinement was necessary to avoid depreciating the seriousness of the offense, that confinement would deter others likely to commit similar offenses, and that measures less restrictive than confinement had been frequently or recently unsuccessfully applied to the appellant. The court further found that the appellant had poor rehabilitative potential.

The court imposed the maximum sentence of six months and suspended all but ninety days of the sentence. On appeal, the appellant contends the imposition of ninety days in confinement is excessive.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 345-46.

Moreover, appellate review of misdemeanor sentencing is de novo with a presumption of correctness even if the trial court failed to make specific findings on the record. See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In misdemeanor sentencing the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." Id. Thus, the trial court is afforded considerable latitude in misdemeanor sentencing. See State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). The trial court retains the authority to place defendant on probation immediately or after a time of confinement. See Tenn. Code Ann. § 40-35-302(a). In sentencing a misdemeanor defendant, the trial court must fix a percentage of the sentence, not to exceed seventy-five percent, that the defendant must serve in confinement before being eligible for release into rehabilitative programs. See Tenn. Code Ann. § 40-35-302(d).

The State acknowledges that the trial court should not have considered the appellant's commission of the instant offenses while on probation as an enhancement factor because that factor is applicable only for a felony committed while on certain forms of release. See Tenn. Code Ann. § 40-35-114(13). However, we agree with the State that in determining the length of the sentence to be spent in confinement, the trial court could consider that the appellant had previously been granted probation yet continued to reoffend.

The appellant acknowledges that he has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). However, he maintains that the imposition of ninety days of incarceration "is excessive and inconsistent with the purpose of the sentencing guidelines and is greater than that deserved for the offense committed." The record belies this contention.

The trial court observed that the appellant had a criminal history spanning twenty-five years and that most of his convictions were driving offenses and/or alcohol and drugs. The court found that the appellant had poor rehabilitative potential and, thus, a period of confinement was appropriate. Given the considerable latitude afforded to a trial court in misdemeanor sentences, we conclude that the trial court did not err in ordering the appellant to serve ninety days of his six-month sentence in confinement. See State v. William P. Brooks, No. E2000-00555-CCA-R3-CD, 2001 WL 277981, at *3 (Tenn. Crim. App. at Knoxville, Mar. 22, 2001).

### III.  Conclusion

In sum, we conclude that the trial court made no reversible error in sentencing the appellant. The judgments of the trial court are affirmed.

_____
NORMA MCGEE OGLE, JUDGE